[Civil No. 886. Filed March 31, 1906.]

[85 Pac. 1067.]

## THE MEYER-CLARKE-ROWE MINES COMPANY, Plaintiff and Appellant, v. ALBERT STEINFELD, Defendant and Appellee.

1. MINES AND MINING—CLAIMS—BOUNDARIES—CONFLICT—EVIDENCE—FINDINGS.—In an action to settle an alleged conflict in the boundaries of two mining claims, a finding that a point 300 feet north, 9 degrees west from the east end center of one of the claims, where the old northeast corner monument stood, was at the point now marking the southeast corner of the conflicting claim according to the survey for the patent. *Held* to be inconsistent, self-contradictory, mathematically impossible, and unsupported by the evidence.

Rehearing on appeal from District Court of the first Judicial District in and for the County of Pima. Geo. R. Davis, Judge. Reversed.

For former opinion, see 9 Ariz. 245, 80 Pac. 400.

The facts are stated in the opinion.

William M. Lovell, and Thomas H. Mitchell, for Appellant.

Selim M. Franklin, for Appellee.

DOAN, J.—The appellant is the owner of a patented mining claim known as the "Patterson." The appellee is the owner of a mining claim known as the "Iron Mountain" adjoining the "Patterson" on the north. A survey of the "Iron Mountain" in support of the application for patent includes a strip 34½ feet wide along the northern side of the "Patterson" for the full fifteen hundred feet, which is claimed by the appellant to be within the external boundaries of the "Patterson," according to the patent issued therefor in 1884. The appeal in this case was presented at the last term of this court, and the judgment of the lower court was reversed in accordance with the opinion written by Mr. Justice Sloan, 9 Ariz. 245, 80 Pac. 400. A rehearing was granted on application of the appellee, and the case again presented at this term of court.

We held in the original opinion in this case that the decree of the court excluding the ground in controversy from the "Patterson" and including it within the boundaries of the "Iron Mountain" claim was not sustained by the findings, and for that reason the judgment was reversed. A further presentation of the case and an examination of the evidence convinces us that the decree of the court is not sustained by the findings as formerly stated, that the seventh and eighth findings are unsupported by any evidence, and the latter part of the sixth finding is inconsistent and self-contradictory.

The evidence contains the testimony of three deputy mineral surveyors who have recently made surveys of this property—Mr. Santee, who for the plaintiff made a survey in 1899, and again in 1902 or 1903; Mr. Chilson, who made a survey for the defendant shortly after Santee's survey in the year 1899; and Phillip Contzen, who made the survey in support of the application for patent of the "Iron Mountain" in 1902. The surveys all purport to start from the west end center of the "Patterson" mining claim. The three surveyors practically agree in their testimony as to the courses and distances between the different points on the several lines of the two claims, and the contention in regard to the disputed strip 34½ feet wide lying either above or below the boundary line between the "Patterson" and the "Iron Mountain" arises from the dispute as to the proper location of the west end center as the initial point. The plaintiff claims that the true west end center of the "Patterson" is at the point where the initial monument designating it now stands, while the defendant claims that its true location, as called for in the field-notes of the survey for patent, is 36 feet S., 9 degrees E. from that monument. Starting from a point thirty-six feet south of the initial monument as the correct end center, the two surveys for the defendant run N. 9 degrees W. 300 feet, and there fix the northwest corner of the "Patterson" and the southwest corner of the "Iron Mountain." They run thence 1,500 feet N., 81 degrees E., and fix the northeast corner of the "Patterson" and the southeast corner of the "Iron Mountain" at a point where they say the northeast corner of the "Patterson" was originally located by the survey for the patent. They run thence S. 9 degrees E. 300 feet, to an old pile of

stones, at a point which they claim represents the true east end center of the "Patterson"; thence from these old stones S. 9 degrees E. 300 feet, to a point which they claim is the correct location for the southeast corner of the "Patterson," as designated by the patent and the calls of the survey, and which is 35½ feet from the plaintiff's monument marking said corner. They run thence S. 81 degrees W. 1,500 feet, to a point which they claim to be the proper location for the southwest corner of the "Patterson," at which no monument is found, but which Contzen locates 43 feet, and Chilson 37 feet, south of the monument claimed by the plaintiff and found by the court to mark the true southwest corner. They run thence 297 feet to the point of starting, which they claim is the true west end center of the "Patterson," but which they say is 36 feet S. 9 degrees E. from the monument now marking said west end center, and which is claimed by the plaintiff and found by the court to be the one erected on the survey for the patent. They testify that the point fixed by them for the northwest corner of the "Patterson," and the southwest corner of the "Iron Mountain," while 301 feet distant from the true west end center as claimed by them, is 36 feet south of the corner monument erected by the plaintiff, and is only 265 feet distant from the monument designating the west end center, and they likewise testify that the point fixed by them for the northeast corner of the "Patterson" and the southeast corner of the "Iron Mountain" is 37 feet S. 9 degrees E. from the monument erected by the plaintiff to designate the same common corner. They testify that running 300 feet from the corner established by them as the northeast of the "Patterson" and the southeast of the "Iron Mountain" takes them to a point where some old stones were found 35½ feet S. 9 degrees E. from the monument claimed by the plaintiff to represent the east end center of the "Patterson," and that 300 feet from the point marked by these old stones (35½ feet south of the point claimed by the plaintiff to represent the east end center) they fixed the southeast corner of the "Patterson," at a point 35½ feet south of the monument claimed by the plaintiff to represent the said southeast corner. The testimony of Santee, who surveyed the claim for the plaintiff in 1899 and again in 1902, agrees in all these material points with their testimony. Santee, however, claims that the monument

designated as the west end center of the "Patterson" claim stands now in the identical place in which it was built by the surveyor who made the official survey for the patent, and that the corner established by him 300 feet north from that initial monument, and 36 feet north of the point designated by the other surveyors, is the true northwest corner of the "Patterson," and the southwest corner of the "Iron Mountain"; that, running thence N. 81 degrees E. 1,500 feet, the monument in place 37 feet N. 9 degrees W. of the point found by Chilson and Contzen as the corner common to the northeast of the "Patterson" and southeast of the "Iron Mountain" designates the true corner of those claims, and that, 300 feet S. 9 degrees E. from that corner, the true east end center of the "Patterson" is designated by the monument there standing as claimed by the plaintiff, and that the monument 300 feet S. 9 degrees E. from the said east end center monument designates the true southeast corner of the "Patterson" at a point 35½ feet N. 9 degrees W. from the point claimed as such corner by Chilson and Contzen; and that running thence 1,500 feet in a course S. 81 degrees W. he strikes the true theoretical southwest corner of the "Patterson" at a point 11 feet south of the southwest corner monument, as erected by the official surveyors for the patent and now standing on the ground, which is conceded to be 289 feet S. 9 degrees E. from the initial monument which the plaintiff alleges marks the true west end center of the claim.

The court found as a fact that "the west end center monument of said 'Patterson' mine, as described and called for in said patent of said 'Patterson' mine aforesaid, is situate on the ground at the point originally established by the deputy mineral surveyor who made the survey of said mine for patent." The court found that "the monument erected on the ground by the said deputy mineral surveyor as marking the southwest corner of said 'Patterson' mine, and as called for and described in said patent is also situate upon the ground at the point where the same was first erected; that said monument is situated S. 9 degrees E. 289 feet from the said west end center monument; that the monument erected upon the ground by the said deputy mineral surveyor, who made the survey for patent of the said 'Patterson' mine, as marking the southeast corner of said 'Patterson' mine as called for and

described in the said patent, and also in the field-notes of survey of said 'Patterson' mine, is also situated upon the ground at the point where the same was first erected by said deputy mineral surveyor, and being the monument called for and described in said patent and field-notes aforesaid, said monument being, approximately, N. 81 degrees E. 1,500 feet from the said southwest corner monument of said 'Patterson' mine; that the monument erected upon the ground by the deputy mineral surveyor who made the survey for patent of said 'Patterson' mine as marking the east end center of said 'Patterson' mine, as called for and described in the said patent, and also in the field-notes of survey of said 'Patterson' mine, is also situate upon the ground at the point where the same was first erected by said mineral surveyor, and being the monument called for and described in said patent and field-notes aforesaid, said monument being N. 9 degrees W. 300 feet from the said monument, aforesaid, marking the southeast corner; that the shaft designated in the patent as 'Shaft No. 3,' bears S. 81 degrees W. at a distance of 100 feet from said east end center monument."

In these findings, the court has found the location of the west end center, the southwest corner, and the southeast corner situate on the ground at the different points as claimed by the plaintiff, and has found that the monuments now marking those points are the ones that were erected upon the ground by the deputy mineral surveyor. These findings are fully supported by the evidence. The surveyor for the plaintiff testified that 300 feet from the east end center the southeast corner monument was 35 feet N. 9 degrees W. of the point claimed by the defendant's surveyors as the true southeast corner, and that, running from the southeast corner as found and designated by him 1,500 feet in a course S. 81 degrees W. brought him 11 feet S. 9 degrees E. of the southwest corner monument, which has been proved by all of the surveyors and found by the court to be 289 feet S. 9 degrees E. from the west end center, being thus 11 feet short of the 300 feet intended, and for this reason the southeast corner monument is approximately N. 81 degrees E. from said southwest corner, instead of being exactly in that course. This also is supported by the testimony of the two surveyors for the defendant that running 1,500 feet S. 81 degrees W. from the

point established by them as the corner which was 35½ feet south of the corner claimed by the plaintiff, brought Chilson 37, and Contzen 43, feet south of the aforesaid southwest corner monument, and therefore makes it plain that the point from which they start could not have been referred to by the court as the southeast corner.

The finding of the court relative to the monument at the east end center is not entirely clear. The court has found "that the monument erected on the ground by the United States mineral surveyor, who made the survey for patent of said 'Patterson' mine as marking the east end center, is situate upon the ground where the same was first erected," and then finds that the monument is "N. 9 degrees W. 300 feet from the southeast corner," and that the shaft designated in the patent as "Shaft No. 3" bears S. 81 degrees W., a distance of 100 feet from the east end center monument. If the court herein meant to designate the east end center, as claimed by the plaintiff, the finding is supported by the evidence so far as the distance is concerned, but there is no evidence in the record that the shaft bears from that monument in the course and at the distance named. It may, or it may not. The record presents no evidence on that point. There is evidence that there is a shaft that bears from the point claimed by defendant to be the east end center in that course and at that distance, but if this be taken as the point intended by the court in its findings, there is no evidence in the record to sustain the distance, but all of the evidence in regard to the distance contradicts the finding. The distance established by the testimony of all the witnesses is 265.5 feet to that point. The court likewise has found that "the monument erected upon the ground by the deputy mineral surveyor, who made the survey for patent, is situate upon the ground at the point where the same was first erected," and the testimony of the surveyors for the defendant, being the only evidence in the record on that subject, is to the effect that there was no monument at that place. One of them testified that it was a point where some old stones were found; another testified a pile of old stones, and in another place the remains of an old monument, none of which support, but all of which contradict, the finding that the monument erected in 1884 is situate upon the ground at the point where the same was first erected.

The finding of the court, therefore, if intended to apply to the location as claimed by the defendant, being not only unsupported by, but directly contrary to, the evidence as to the distance from the southeast corner, and as to its being the monument first erected by the United States mineral surveyor, we are constrained to interpret it as referring to the point claimed by the plaintiff. By this location of the east end center, the next finding wherein the court found as a fact that "in the month of April, 1899, there existed at a point N. 9 degrees W. from the east end center monument, at a distance of 300 feet, the monument marking the northeast corner of the 'Patterson' as called for in said patent and fieldnotes aforesaid. . . . That in April, 1899, said monument was destroyed and a new monument erected. . . . That the point where said monument stood is still known and identified and is at the point now marking the southeast corner of said 'Iron Mountain' mining claim according to the survey for patent of said 'Iron Mountain' mining claim. . . . That said point at which said northeast corner monument of said 'Patterson' mine was situate and located is identical with the southeast corner of the 'Iron Mountain' claim, as surveyed for patent by defendant, and is situate S. 9 degrees E. 35.2 feet from the monument so erected in 1899, and now claimed by plaintiff as being the northeast corner of said 'Patterson' mine," is unsupported by any evidence; in fact, is contrary to all of the evidence in the case. The testimony of the three surveyors constitutes all of the evidence in the record on that subject. The point thus designated by the court as the northeast corner of the "Patterson" instead of being as found by the court 300 feet N. 9 degrees W. from the east end center monument has been testified to by the two surveyors for the defendant, Chilson and Contzen, as 300 feet N. 9 degrees W. from "some old stones" at the point 35½ feet south of the point claimed by the plaintiff to be the true east end center, and therefore only 265.5 feet distant from the east end center monument referred to by the court in its findings. The testimony of Santee agrees with this by stating that the northeast corner 300 feet N. 9 degrees W. from the east end center, was 35½ feet N. 9 degrees W. from the corner erected by Chilson and Contzen. The finding, therefore, that "the point 300 feet N. 9 degrees W. from the east end center, where

the old northeast corner monument stood, is at the point now marking the southeast corner of the 'Iron Mountain' according to the survey for patent of said claim," besides being unsupported by any evidence, is inconsistent, self-contradictory, and mathematically impossible. The finding of the court fixing the northwest corner of the "Patterson" is correct, theoretically, but, being dependent upon the finding as to the northeast corner, must fall with it.

The judgment of the lower court is reversed, and the case is remanded for a new trial.

KENT, C. J., SLOAN, J., CAMPBELL, J., and NAVE, J., concur.